WILLIAM EKWORTZEL, Plaintiff and Respondent, v. DAVID PARKER, Defendant and Appellant.

No. 11798.
Submitted September 17, 1970.
Decided March 2, 1971.
482 P.2d 559.

478

MR. JUSTICE CASTLES, did not participate in decision.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Joseph Gerbase, Billings, argued, for defendant and appellant.

Berger, Anderson, & Sinclair, Billings, Richard W. Anderson, Billings, argued, for plaintiff and respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

Appeal from the district court of the thirteenth judicial district, county of Stillwater.

The plaintiff, William Ekwortzel, operates and resides on a cattle ranch near Nye, Montana, approximately 80 miles from Billings, Montana. Defendant David Parker, is a nonresident owner of a ranch and acreage approximately two miles distant from plaintiff's ranch. Defendant keeps burros and one mule on his ranch. The parties have legal fences but the mule was difficult to contain and escaped defendant's enclosure entering upon the plaintiff's land. While plaintiff was attempting to remove the mule, his horse fell and plaintiff's leg was broken.

Plaintiff filed suit for personal injuries in the amount of $12,500, alleging the mule was of a bothersome disposition; had a propensity to escape; and, that this fact was known to the defendant. That on May 10, 1967, defendant negli-

gently permitted the mule to escape and trespass on plaintiff's property and said trespass was permitted to continue until May 17, 1967; that on May 17, 1967, the mule caused the horse on which plaintiff was riding to fall, resulting in a broken leg for plaintiff. That, at that time and place, the mule constituted a nuisance as defined in Title 57, Chapter 1, R.C.M.1947, in that the mule interfered with the use of plaintiff's property and of an adjacent public highway. Defendant filed a general denial and the affirmative defenses of contributory negligence and assumption of risk.

The case was tried to a jury on October 6, 1969 and on October 7, 1969, the jury returned a general verdict for plaintiff in the amount of $4,000. Defendant moved for judgment notwithstanding the verdict and in the alternative for a new trial. These motions were denied and defendant appeals from the final judgment and denial of a new trial.

Defendant lived in Billings, and came to his ranch property generally on weekends. The mule in question was an animal of approximately 800 pounds placed on defendant's ranch some 10 months before the accident for recreational purposes. It was known to defendant that the mule would and did escape the enclosure on at least three occasions between March and May, when the accident occurred. The mule liked to be with horses or people. The mule could be retained by tying him to a burro or by keeping him in defendant's corral, neither of which was done by the defendant to keep the animal restrained. Defendant had employed a neighbor boy to look after his ranch interests in his absence but had discontinued the practice before the time of the accident. At the time of the accident, defendant had no employee at the ranch. There is a conflict in the evidence concerning the mule's disposition. Defendant claims the mule to be gentle and playful while plaintiff contends he is either mischievous or vicious and is capable of and did do great harm and property damage.

On May 10, plaintiff found the mule inside his horse pasture, in the company of his two horses. This was the third time the mule had entered that same enclosure, and plaintiff knew the animal and its owner. Plaintiff assumed defendant would be at his ranch on the weekend, as was his usual practice, and therefore, made no effort to contact defendant on the 10th. On Sunday, May 14, plaintiff moved his two horses from the horse pasture to the "house area" pasture, east of a county road. He left the mule in the horse pasture. The horses were moved on that date in order to have them available the next morning when plaintiff intended to herd 73 cows and their calves along the county road between the horse pasture and the balance of plaintiff's property.

The horses were not removed for long when the mule broke out of the horse pasture, crossed the county road, and entered the legally fenced house area pasture, adjacent to plaintiff's house. The mule chased ten head of plaintiff's cattle around the house area pasture and drove three of them through the north fence and across the West Fork River. Plaintiff then transferred his two horses from the house area pasture back into the horse pasture to contain the mule.

When it became apparent on Sunday, May 14, that defendant would not be at his property for the weekend, plaintiff's wife attempted to call him in Billings, but found no one at home. She also called a neighbor farm boy who at one time had cared for the defendant's stock. He was no longer employed.

Plaintiff's two horses and defendant's mule then stayed in the horse pasture from May 14 to May 17. On that date, plaintiff tried to catch one of his horses to use in herding cattle, but the mule would not permit it. He would kick the horse away from plaintiff and eat the pan of grain intended by plaintiff to attract his horse. In an effort to get his

horse, plaintiff lured the mule out into the county road in the company of his second horse. After saddling his horse, plaintiff set out to return the mule to the horse pasture. He found the mule and the other horse had wandered down the county road to an intersecting paved road. Plaintiff testified as to what then occurred as follows:

"A. Well, they had went over as far as Carter's Camp there when I caught up with them, and I tried to herd the horse and the mule back onto the county road and the mule wouldn't go, he wanted to play with me. And he dodged around that telephone exchange building and he cut east and I turned him back, and instead of going on the graveled road he turned west and I was turning him there. When he dodged back toward the county road my horse turned with the mule to keep him headed toward the county road and his feet slipped out from under him and fell on my leg."

Defendant raises five issues on appeal.

Issue I. Whether or not there should have been a directed verdict, because plaintiff failed to prove a violation of sections 32-1018 through 32-1020, R.C.M.1947.

These code sections have to do with the prohibition directed at willfully permitting livestock to graze, remain upon or occupy state highways that have been "designated by agreement between the state highway commission and the secretary of commerce as a part of the national system of interstate and defense highways; or any state highway, designated by agreement between the state highway commission and the secretary of commerce as a part of the federal-aid primary system * * *." Section 32-1018, R.C.M.1947. There is no evidence in the record to indicate the oil surfaced road here was other than a county road.

Issue 2. Whether or not the plaintiff's complaint sets forth two independent causes of action, one being in negligence and the other in nuisance, or in reality sets forth one claim in negligence.

Defendant argues that the complaint sets forth one claim in negligence and the two claims together of nuisance and negligence is a sham, quoting from Jeffers v. Montana Power Co., 68 Mont. 114, 138, 217 P. 652 (1923). In *Jeffers*, instituted on the theory of nuisance, as set out in section 57-101, R.C.M. 1947, this Court said:

"That a nuisance may exist with or without negligence is too clear to require either argument or citations, but when negligence is a necessary element it is fraught with no little difficulty. Each case must be governed by its own facts, and no hard-and-fast rule can be laid down by which to determine when it is necessary to allege and prove negligence in an action for a nuisance.

In support of his argument defendant also cites from Prosser, Torts, 3rd Ed., and quotes from a California case, Coates v. Chinn, 51 Cal.2d 304, 332 P.2d 289, as follows:

"The obstructions in the cited cases arose from the intentional invasion of the plaintiffs' interests. [cited cases] But here there was no such intentional act, for so long as the trees and their limbs remained in place alongside of the road, they did not constitute an obstruction to free travel thereon; and it was only the falling of the limb that created the obstruction. Defendants' liability was therefore not absolute and it can be predicated only upon a showing of negligence. As stated in Prosser on Torts (2nd ed. 1955), page 392; '*a nuisance may also result from conduct which is merely negligent,* where there is no intent to interfere in any way with the plaintiff, but merely a *failure to take precautions against a risk apparent to a reasonable man.*' Accordingly the merits of plaintiffs' appeal must be determined in relation to the reasonableness of defendants' conduct under all the circumstances * * *." (Emphasis supplied.) The cases cited by defendant and the argument demonstrate no more or less than that which was done in the instant case and defendant's argument

answers his own question. Evidence was introduced in both of these areas and the jury was instructed on negligence, nuisance, proximate cause, foreseeability, intervening cause, contributary negligence, and assumption of risk.

■ Issue 3. Whether or not the defendant could foresee the accident in which plaintiff was involved. Defendant argues for a rule of law which would require the foreseeability by the defendant of a specific accident, i.e. "that a neighbor's horse would slip and fall on a paved highway due to his mule," to establish duty and proximate cause. He relies on Mang v. Eliasson, 153 Mont. 431, 437, 458 P.2d 777, 781, wherein the Court held that an unprecedented high wind was an intervening cause and unforeseeable, and rightly so, but *Mang* did not abandon the doctrine of foreseeability and duty in Montana as is evidenced by this language:

" '* * * the law judges the actor's conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonably prudent person would then have foreseen as likely to happen, is the key to the question of reasonableness * * *' ".

See also Reino v. Montana Mineral Land Etc. Co., 38 Mont. 291, 99 P. 853; Mize v. Rocky Mountain Bell Telephone Co., 38 Mont. 521, 100 P. 971; 2 Restatement of Torts 2d, §§ 445, 446.

Further here the jury was instructed by court's instruction No. 17 as follows:

"You are instructed that foreseeability, that is to say, what the reasonably prudent person would have foreseen as likely to happen because of his conduct, is of prime importance in establishing the element of duty, and the question of defendant's negligence, if any, must of necessity hinge on the finding of a breach of that duty. If a reasonably prudent defend-

ant can foresee neither any danger of direct injury nor any risk from an intervening cause, he is simply not negligent."

We must assume this instruction made the jury mindful of these legal principles.

■ Issue No. 4. Defendant relies on the notice require-ments of sections 46-1410(2) and 46-1709, R.C.M.1947, to pre-clude recovery by plaintiff. We fail to find these code sections relevant to the issues presented in this appeal.

■ Issue 5. Our treatment of issues 1 and 4 answers this issue except for the complaint that the jury was improper-ly instructed on intervening cause by refusal of defendant's proposed instruction No. 18, as follows:

"You are instructed that the burden is upon him who alleges negligence to prove it by substantial evidence and this burden is not substained if the evidence furnishes the basis for two equally permissible conclusions as to what caused the injury, one of which speaks negligence on the part of the defend-ant while the other is wholly inconsistent with it and points to some other efficent proximate cause."

This Court feels that the jury was properly instructed in this matter of law by the court's Instructions No. 2 and No 4 as follows:

"INSTRUCTION NO. 2. In a civil action, such as the one we are now trying, the party who asserts the affirmative of an issue, has the burden of proving that issue by a preponder-ance of the evidence.

"By a preponderance of the evidence is meant such evi-dence as, when weighted with that opposed to it, has more convincing force and from which it results that the greater probability of truth lies therein. This means that if no evidence were given on either side of an issue, your finding would have to be against the party asserting that issue. In the event

that evidence is evenly balanced so that you are unable to say that the evidence on either side of an issue preponderates, that is, has the greater convincing force, then your findings on that issue must be against the person who has the burden of proving it."

"INSTRUCTION NO. 4. You are instructed that before you can return a verdict in favor of the plaintiff and against the defendant, you must find by a preponderance of the evidence that it was the conduct of the defendant that was the proximate and efficient cause of the plaintiff's injury, uninterrupted by any intervening cause."

We find substantial credible evidence to support the findings of the trial jury.

Judgment of the trial court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and HASWELL, concur.

MR. JUSTICE CASTLES did not participate in the decision.