JUSTICE LEAPHART
dissenting.
¶44 I dissent.
¶45 I conclude that based on the special relationship exception, the public duty doctrine does not apply and the City owed a duty to Neighbors. At the time of the incidents giving rise to this lawsuit, Prosser, White, and Crotty were indeed very close neighbors to the Kennedy property. Prosser’s residence sat about thirty inches from the Kennedy property, and only fifteen feet from the casino itself. Crotty and White’s residence sat fifteen feet from the Kennedy property, and about thirty feet from the casino. A wooden fence separated the Neighbors’ properties from the Kennedy property. The Kennedy property was zoned as commercial property, as was the property to the north, which was used as a bank. The properties to the south and east of the Kennedy property were unzoned; however, at the time Kennedy submitted the Precise Plan of Development, the unzoned properties were used as residential properties. Neighbors’ properties were zoned as residential property. When Kennedy submitted Precise Plan of Development No. 2015 to the City of Hamilton, zoning board staff mailed notices to all property owners and commercial tenants within 300 feet of the Kennedy property. The notice of proposed use was also published in the local paper and posted at the city hall.
¶46 The majority dismisses the case under the public duty doctrine, but fails to discuss public duty doctrine cases. As stated above, a recognized exception to public duty doctrine immunity arises when a special relationship exists or is created between the victim and the governmental officer. Massee v. Thompson, 2004 MT 121, ¶¶ 41-42, 321 Mont. 210, ¶¶ 41-42, 90 P.3d 394, ¶¶ 41-42. “[A] special relationship gives rise to a special duty” in any one of four circumstances, the first of which is “by a statute intended to protect a specific class of persons from a particular type of harm.” Massee, ¶ 42. In determining whether a special relationship is established pursuant to statute, this Court looks to the relevant statute. See Orr v. State, 2004 MT 354, ¶ 47, 324 *223 Mont. 391, ¶ 47, 106 P.3d 100, ¶ 47 Massee, ¶¶ 34-39;Eklund v. Trost, 2006 MT 333, ¶ 36, 335 Mont. 112, ¶ 36, 151 P.3d 870, ¶ 36.
¶47 In Orr, we determined that a special relationship was created between the State and vermiculite miners by statutes which were “designed to protect men and women working in the various industries in Montana from occupational disease.” Orr, ¶ 44. Although the statutes did not specifically reference miners, miners were members of that specific class of persons. Orr, ¶ 44. Thus, the State had a special duty to protect the health and safety of miners from known dangers in their workplace. Orr, ¶ 47. This Court concluded that, because a special relationship existed between the State and the miners, the State was “not shielded by the application of the Public Duty Doctrine.” Orr, ¶ 47.
¶48 In Massee, the statutes at issue provided that law enforcement officers were to provide domestic violence victims with a notice of the availability of shelters and any legal rights and remedies such victims may have. Massee, ¶ 34. These statutes were enacted to prevent serious injury or death as a result of domestic violence. Massee, ¶ 43. The victim in Massee died as a result of domestic violence. Massee, ¶ 43. Thus, the officer had a special duty to the deceased victim as a member of that protected class, and the public duty doctrine did not apply. Massee, ¶¶ 43-44.
¶49 Recently we determined that a statute requiring drivers of police vehicles to proceed with due regard for the safety of all persons created a special class of protected persons. In Eklund, a youth escaped from a detention center, stole a vehicle, and led law enforcement on a high speed chase. Eklund, ¶¶ 10-15. The chase continued into town where the youth lost control of his vehicle and struck Eklund. Eklund, ¶ 17. The statute mandated that officers, while driving in an emergency or high speed situation, still had a “duty to drive with due regard for the safety of all persons.” Eklund, ¶ 36 (quoting § 61-8-107, MCA (2003)). We held that the statute created a special class of persons encompassing those who, by use of streets and highways, are potential victims of high speed chases. Eklund, ¶ 39. Law enforcement owed a duty to drive with due regard to this class of persons, and thus, the public duty doctrine did not apply. Eklund, ¶ 39.
¶50 Like the statutes giving rise to a duty to mine workers in Orr, the domestic violence victims in Massee, and people using the streets in Eklund, the ordinances in this case create a duty to a special class of persons. The ordinances at issue in this case, those providing that a precise plan of design must be submitted to the zoning board, are for *224 the purpose of “insuring] compatibility to the surrounding existing and planned uses.” Hamilton Mun. Code (Mont.) § 17.116.010 (2003) (emphasis added). In cases where a proposed use would not be compatible to the surrounding existing uses, the ordinances instruct the zoning board as follows:
If the proposed plan of design would substantially depreciate property values in the vicinity or would unreasonably interfere with the use or enjoyment of property in the vicinity by the occupants thereof for lawful purposes ... such plan shall be rejected or shall be so modified or conditioned before adoption as to remove the objections.
Hamilton Mun. Code at § 17.116.050 (emphasis added). These ordinances are clearly intended to protect occupants in the vicinity of the property that is the subject of the proposed plan of design from incompatible uses. Neighbors were occupants in the vicinity of the Kennedy property. The zoning board recognized this class of persons existed when it specifically mailed notice to every property owner and commercial tenant within 300 feet of the Kennedy property, in contrast to the posted and published notices provided to the general public. In enacting these ordinances, the City recognized that incompatible uses in the same vicinity could depreciate property values and interfere with the occupants’ use and enjoyment of their property. Thus, the City had a duty to protect Neighbors from such harm.
¶51 The ordinance then mandates that when plans are submitted that could result in the harm anticipated, the City must modify or reject the plan. Hamilton Mun. Code at § 17.116.050. Here, existing land use on three sides of the Kennedy property was residential. To the north, the land was commercial, but was currently used as a bank. A lounge is not like a bank that closes its doors in the early evening. It stays open into the early morning hours. Lounges often play music to entertain their patrons. Patrons consume alcohol in a lounge. Alcohol impairs judgment and is known to lead to fighting and other rowdy and loud behavior, which directly impacts the surrounding area. Given the high potential for incompatibility, the City owed a duty to Neighbors to modify or condition the plan to correct such conflicts or reject it entirely. The City contends that it fulfilled its duty by conditioning the plan, requiring the casino to limit all activities to the interior of the building. By imposing this condition, the zoning board foresaw the problems that inebriated, unruly patrons could cause in a residential area. However, this condition was clearly not enough to ameliorate the concern.
*225 ¶52 The majority interprets the ordinance to be a mere “procedure” for property development rather than an expression of the City’s intent to protect residents who live in the vicinity. I submit that the procedure is designed to ensure compatibility to the surrounding area. Hamilton Mun. Code at § 17.116.010. Procedures created by statute are often, in essence, a promise by a governmental entity to a class of persons ensuring something. In State v. District Court, 246 Mont. 225, 232, 805 P.2d 1272, 1277 (1990), we held that statutes required the Workers’ Compensation Division to undertake a review process before granting an employer self-insured status. This process is designed to protect a specific class of persons (employees of such businesses) from a particular type of harm-that is, injury while working for an employer without the financial resources necessary to provide benefits. In Newville v. State, Dept. of Family Services, 267 Mont. 237, 269, 883 P.2d 793, 812 (1994), we held that the Department of Family Services is required to license and train foster care providers and to investigate adoptive homes. This licensing process is designed to protect a specific class of persons (foster and adoptive children) from a particular type of harm-placement in an unsafe home. See § 41-3-101, MCA. Although State v. District Court and Newville do not discuss the public duty doctrine, they provide examples where the government, without question, owed a duty to a specific class of persons.
¶53 Like the above statutory schemes, the ordinance in question is designed to protect a specific class of persons, those in the vicinity, from a particular type of harm-that is, property devaluation and/or interference with enjoyment of use from incompatible uses.
¶54 The cases the majority references for the purpose of demonstrating that other jurisdictions refuse to find that land use regulations create a special relationship between landowners and the government are distinguishable based on the statutes at issue. In Wolfe, the statute at issue was a regulation within the building code that provided that an application would expire if not acted upon within a certain number of days. Wolfe v. Bennett PS & E, Inc., 974 P.2d 355, 359 (Wash. App. 1999). It did not purport to protect a certain class of persons, nor did it specify any particular type of harm it was meant to prevent.
¶55 In Taylor, the statute at issue stated that building permits would not be issued to “any applicant or person who fails to provide sufficient evidence of compliance with all laws and regulations relating to the use of land and the construction or improvements of structures thereon.” Taylor v. Stevens County, 759 P.2d 447, 449 (Wash. 1988). *226 The statute does not specify a particular type of harm it is meant to prevent, or any specific class of persons it is meant to benefit. The plaintiffs in Taylor argued that the purpose of the code provisions was to “promote the health, safety and welfare of the occupants or users of buildings and structures and the general public.” Taylor, 759 P.2d at 450 (italics in original). The court in Taylor recognized the statute’s broad purpose of protecting the public, and distinguished it from a more specific statute with the particular purpose of identifying “conditions and circumstances [which] are dangerous and a menace to the health, safety, morals or welfare of the occupants of such buildings and of the public....” Taylor, 759 P.2d at 450 (italics in original) (citing Halvorson v. Dahl, 574, P.2d 1190, 1192-93 n.1 (Wash. 1978)). In the Halvorson case where the more specific statute was at issue, the court determined there was a clear intent to protect occupants of substandard housing despite the “traditional rule that a local government is under no duty, ascertainable in tort, to ensure compliance with its building code.” Taylor, 759 P.2d at 450 (citing Halvorson, 574 P.2d at 1192). The statute was “enacted for the benefit of a specifically identified group of persons as well as, and in addition to, the general public.” Halvorson, 574 P.2d at 1193.
¶56 Finally, in Derwort v. Polk County, 501 S.E.2d 379,381 (N.C. App. 1998), the subdivision planning statutes at issue referred only to the general welfare, to citizens, and to the public. The statutes did not contain language expressing an intent to protect a specific class from a specific type of harm. Similarly in Myers v. Moore Engineering, Inc., 42 F.3d 452, 456 (8th Cir. 1994), the plaintiffs argued the city negligently issued a building permit, and that the public duty doctrine should not apply because a special relationship existed. The Myers plaintiffs, however, failed to point to any particular statute or code provision that would establish a special relationship. Myers, 42 F.3d at 456.
¶57 These cases can be further distinguished because, other than in Halvorson, 574 P.2d at 1192-93, the courts applied a different test to determine whether a special relationship existed. Rather than recognizing that statutes can give rise to a special relationship if they are designed to protect a special class of persons from a particular type of harm, the State of Washington stated that a special relationship is created when:
(1) there is direct contact or privity between the public official and the injured plaintiff which sets the latter apart from the general public, and (2) there are express assurances given by a public *227 official, which (3) gives rise to justifiable reliance on the part of the plaintiff.
Taylor, 759 P.2d at 451 (citations omitted); Wolfe, 974 P.2d at 359 (citations omitted). North Carolina’s and North Dakota’s test for determining whether a special relationship is created is similar to Washington’s and does not address the question of whether a special relationship is created by a specific statute. Derwort, 501 S.E.2d at 382 (citations omitted); Myers, 42 F.3d at 456-57.
¶58 Like in Halvorson, the City of Hamilton, by including such specific language in the ordinances, expressed a clear intent to protect occupants in the vicinity of a proposed plan of development from a particular type of harm when the proposed plan is not compatible with the surrounding uses. This Court recognizes, where other jurisdictions have not, that statutes can create special relationships.
¶59 In the present case, given the specificity of the ordinance and the resulting special relationship between the City and those occupying the property in the vicinity of the proposed use, the public duty doctrine does not apply. I conclude that the City owed a duty of care to Neighbors and would reverse on that basis.
JUSTICE COTTER joins the dissenting opinion of Justice Leaphart.