DA 06-0766

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 105

WADE FISHER,

      Plaintiff and Appellant,

  v.

SWIFT TRANSPORTATION CO., INC.,
and J & D TRUCK REPAIR, INC.,

      Defendants, Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADV 2005-4,
Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          James G. Hunt and Michael L. Fanning, Hunt Law Firm,
Helena, Montana

      For Appellees:

          John F. Haffey and Robert J. Phillips, Phillips Boyher & Hedger,
P.C., Missoula, Montana (Swift)

          Dan L. Spoon, Spoon Gordon, PC, Missoula, Montana (J & D)

                       Submitted on Briefs:  October 3, 2007

                                    Decided:  April 1, 2008

Filed:

_____
                       Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Officer Wade Fisher ("Fisher") appeals the District Court's partial grant of summary judgment in favor of Swift Transportation Company ("Swift"). Swift cross-appeals the District Court's partial denial of its summary judgment motion. We affirm in part, and reverse and remand in part.

¶2 We restate the issues as follows:

¶3 I. Did the District Court err by partially denying Swift's motion for summary judgment, and concluding that Swift owed Fisher a duty of care as a matter of law?

¶4 II. Did the District Court err in partially granting summary judgment to Swift on the issue of causation, and concluding that Fisher's injury was unforeseeable as a matter of law?

## BACKGROUND

¶5 An unseasonably severe storm hit the Sieben Flats area on April 28, 2004. Wade Fisher, an officer with the Montana State Highway Patrol, was called to respond to an accident on Interstate 15. The storm had created white-out conditions on the highway. Many motorists were forced to stop their vehicles in the middle of the highway, due to the slick, snow-packed roads, high winds, and extremely poor visibility.

¶6 Fisher approached the accident scene near mile marker 213 in the southbound lane. Michael Mlekush, a deputy from the Lewis and Clark County Sheriff's office, was already on the scene. Fisher parked his car diagonally across the highway lanes, parallel to Mlekush's car, but staggered a fair distance behind it to increase visibility of the accident scene. Both cars had their emergency lights flashing to warn oncoming traffic.

2

¶7　　Fisher proceeded to investigate the crash, which was caused by a Pepsi semi-truck that had side-swiped two passenger vehicles parked on the side of the highway. About twenty minutes later, another semi-truck (owned and operated by Swift) approached the accident scene. Mlekush watched as the trailer slowly slid into Fisher's car. The semi's trailer struck Fisher's vehicle, as well as a passenger car parked behind it. Fisher could not investigate this second accident, since it involved his own patrol car. He called in Sergeant Larry Irwin to respond to the Swift accident.

¶8　　J & D Truck Repair Inc. ("J & D") was called to the scene to remove the wreckage from the second accident. Irwin directed the J & D employees to get the Swift trailer away from the two cars it had impacted. The J & D employees positioned the wrecker in the passing southbound lane next to the Swift truck. They rigged the winch line from the wrecker to the Swift trailer, and winched the line. Then they lifted the Swift trailer away from the two cars, and set it about four or five feet away from Fisher's patrol car. Without alerting anyone else, the J & D employees unhooked the winch line from the Swift truck.

¶9　　During the winch operation, Fisher was seated in the passenger side of his car, completing his paperwork for the first accident involving the Pepsi truck. Once the trailer was lifted and after the winch was unhooked, one of the J & D employees directed Fisher to back his car out and away from the accident scene. Fisher got out of his vehicle, and walked around to the driver's side to inspect the damage. At that moment, the Swift trailer slid back across the ice towards Fisher's car, and pinned him between the trailer and the car.

3

¶10 The J & D wrecker team quickly re-attached the winch, and managed to pull the trailer away from the car within several minutes. Fisher was freed and carried to the side of the road, where he waited for an ambulance. He was treated at a nearby hospital for crush-type injuries and released later that day.

¶11 Fisher brought suit against Swift and J & D to recover for damages he sustained as a result of their alleged negligence. Swift moved for summary judgment, arguing that it owed no duty to Fisher, and that its driver's conduct was not the cause of Fisher's injuries. The District Court partially granted and partially denied Swift's motion for summary judgment. The District Court rejected Swift's argument that it owed no duty to Fisher and found that Fisher was a foreseeable plaintiff as a matter of law. However, the court found in favor of Swift on the issue of causation, and held that the injuries that Fisher sustained were unforeseeable as a matter of law. Pursuant to M. R. Civ. P. 54(b), the District Court certified this issue for appellate review. Fisher's claims against J & D remain in the District Court, awaiting trial. Fisher appeals the District Court's partial grant of summary judgment in favor of Swift. Swift cross-appeals the District Court's partial denial of its motion for summary judgment.

## STANDARD OF REVIEW

¶12 We review a district court's grant of summary judgment de novo. *Eklund v. Trost*, 2006 MT 333, ¶ 20, 335 Mont. 112, ¶ 20, 151 P.3d 870, ¶ 20. Summary judgment is only appropriate when no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issue of material fact exists. *Eklund*, ¶ 21. Once

the moving party meets that burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid a grant of summary judgment in favor of the movant. *Eklund*, ¶ 21. All reasonable inferences will be drawn in favor of the non-moving party. *Eklund*, ¶ 21. Since negligence actions ordinarily involve questions of fact, they are generally not susceptible to summary judgment. *Hinkle v. Shepherd School Dist. # 37*, 2004 MT 175, ¶ 23, 322 Mont. 80, ¶ 23, 93 P.3d 1239, ¶ 23.

**DISCUSSION**

¶13 Fisher appeals the District Court's partial grant of summary judgment in favor of Swift, and argues that the District Court erred in concluding that the Swift driver's negligence was not a proximate cause of Fisher's injury, since the injury was unforeseeable as a matter of law. Swift cross-appeals the District Court's partial denial of its summary judgment motion and the District Court's finding that Fisher was a foreseeable plaintiff as a matter of law. To maintain an action in negligence, the plaintiff must prove four essential elements: duty, breach, causation, and damages. *Eklund*, ¶ 32. Without duty, and a breach of that duty, no negligence can exist. *See e.g. Jacobs v. Laurel Volunteer Fire Dept.*, 2001 MT 98, ¶ 13, 305 Mont. 225, ¶ 13, 26 P.3d 730, ¶ 13. Thus, we will consider Swift's cross-appeal first.

¶14 **I. Did the District Court err by partially denying Swift's motion for summary judgment, and concluding that Swift owed Fisher a duty of care as a matter of law?**

5

¶15    A.  Duty

¶16    At the most basic level, we all share the common law duty to exercise the level of care that a reasonable and prudent person would under the same circumstances. *See e.g. Runkle v. Burlington Northern*, 188 Mont. 286, 299, 613 P.2d 982, 990 (1980) (holding that a railroad had a duty to exercise this level of care, even in the absence of statutorily imposed duties).  We have long recognized that the common law may impose additional, special duties based upon relationship.  For example, a county assumes heightened duties of care with respect to persons in its custody.  *Prindel v. Ravalli County*, 2006 MT 62, ¶ 36, 331 Mont. 338, ¶ 36, 133 P.3d 165, ¶ 36.  Duty may also arise by statute; dram shop acts impose heightened duties of care upon tavern owners.  *Cusenbary v. Mortensen*, 1999 MT 221, ¶ 38, 296 Mont. 25, ¶ 38, 987 P.2d 351, ¶ 38.

¶17    The existence of a legal duty is a question of law to be determined by the court. *Eklund*, ¶ 32; *Hinkle*, ¶ 31; *Henrickson v. State*, 2004 MT 20, ¶ 21, 319 Mont. 307, ¶ 21, 84 P.3d 38, ¶ 21.  In analyzing whether a duty exists, we consider whether the imposition of that duty comports with public policy, and whether the defendant could have foreseen that his conduct could have resulted in an injury to the plaintiff.  *Henrickson*, ¶ 21.

¶18    Here, Fisher argues that multiple sections of the Montana Code impose a duty on the Swift truck driver.  First, Fisher states, § 61-8-302, MCA, imposes on all drivers the duty to drive "in a careful and prudent manner that does not unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the highway."  Second, Fisher maintains that § 61-8-303(4), MCA, imposes a duty of care upon all drivers by providing that they "shall operate a vehicle in a careful and prudent

6

manner and at a reduced rate of speed no greater than is reasonable and prudent under the conditions existing at the point of operation, taking into account the amount and character of traffic, visibility, weather, and roadway conditions." Finally, Fisher points to a third statute, § 61-8-346(3), MCA, which he claims imposes a special duty of care upon drivers approaching a "stationary authorized emergency vehicle."

¶19 We agree that the above-cited sections of the MCA establish that the Swift driver owed Fisher a duty of care. In *Craig v. Schell*, we recognized that certain sections of the MCA may give rise to specific duties of care for motor vehicle operators. *Craig v. Schell*, 1999 MT 40, ¶ 15, 293 Mont. 323, ¶ 15, 975 P.2d 820, ¶ 15. Here, each of these three statutes imposed duties of care upon the Swift driver.

¶20 *1. Foreseeability*

¶21 Swift does not dispute that these statutes imposed duties of care upon its driver, but argues that the injury to Fisher was unforeseeable, so no duty exists. We have held that "the existence of a duty 'turns primarily on foreseeability.'" *Eklund*, ¶ 40 (citation omitted). In *Mang v. Eliasson*, we relied on Justice Cardozo's opinion in the *Palsgraf* case to explain the concept of foreseeability:

> "The risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. Co*. [citation omitted]. That is to say, a defendant owes a duty with respect to those risks or hazards whose likelihood made the conduct unreasonably dangerous, and hence negligent in the first instance.

*Mang v. Eliasson*, 153 Mont. 431, 437, 458 P.2d 777, 781 (1969). We ask "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." *Hinkle*, ¶ 30. A plaintiff is a foreseeable plaintiff if she or he

7

is within the "foreseeable zone of risk" created by the defendant's negligent act. *See e.g. Prindel*, ¶ 38.

¶22 The District Court reasoned that "there is no question that when a person drives in a negligent manner, a reasonably prudent person could foresee that a law enforcement officer attending a resulting accident could be injured by oncoming traffic." We agree. Where a duty is established by statute, we look to the class of people the statute intended to protect to determine whether the plaintiff is a member of that class. *See e.g. Eklund,* ¶ 42. If so, he is a foreseeable plaintiff. *See e.g. Eklund,* ¶ 42. The statutes at issue in the instant case were enacted to protect "person[s] entitled to use the highway." Section 61-8-302(1), MCA. Fisher, as a licensed Montana driver and as a highway patrolman, was a member of the protected class.

¶23 Even if the only duty that the Swift driver owed to Fisher was the common law duty to exercise reasonable care, Fisher would still be a foreseeable plaintiff because he was within the zone of risk created by the driver's alleged negligence. *See e.g. Prindel,* ¶¶ 38-39 (discussing "foreseeable zone of risk"). A driver who fails to exercise the level of care that an ordinary reasonable driver would use could easily foresee that other people on the highway might be hurt as a result of his negligence. The zone of risk created by a negligent driver necessarily includes other drivers and passengers in his immediate vicinity. When that driver's negligence results in an accident, then that zone of risk also encompasses the resulting accident scene, including the emergency responders like police officers and paramedics. As a highway patrol officer who was struck by the Swift driver in a traffic accident, Fisher was clearly within the zone of risk.

¶24     The dissent argues that our opinion today unjustifiably expands the law of foreseeability, and likens our analysis to the "butterfly effect": "Had the butterfly not flapped its wings, the storm may not have occurred; the first accident may not have happened; Fisher may not have come to investigate it; Swift's driver might not have hit Fisher's patrol car; J & D might not have had to move Swift's truck; J & D's workman might not have carelessly unhooked the trailer; and Fisher would not have been injured[.]"

¶25     Fisher was struck not by an errant butterfly, but by Swift's semi tractor-trailer unit. The significance of this is illustrated, once again, by *Palsgraf v. Long Island R. Co.*, 162 N.E. 99 (N.Y. 1928). In *Palsgraf*, a guard on the railroad platform helped a tardy passenger jump from the platform on to the already-departing train. In the process of boarding the moving train, the passenger dropped a newspaper-wrapped package which contained explosives. The package exploded, sending a blast through the station, and knocking over a set of scales at the opposite end of the platform. The scales struck Mrs. Palsgraf, a passenger waiting next to the scales on the platform. Justice Cardozo concluded that Mrs. Palsgraf could not recover from the railroad for her injuries, and emphasizes her distance from the guard: "The conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away." 162 N.E. at 99. Mrs. Palsgraf was struck by the scales, not by the bomb itself. By contrast, Fisher *was* struck by the Swift truck itself—not by an aimless butterfly, a set of scales, or any other intervening object.

¶26    Furthermore, it is well-settled that neither the specific plaintiff nor the specific injury need be foreseen. *Prindel*, ¶ 39; *Eklund*, ¶ 41. In other words, it is not necessary to foresee that Fisher would be injured by the Swift truck sliding across the icy highway as it was being removed from the accident scene, as opposed to, for example, being struck by oncoming traffic. The manner of the accident and the nature of Fisher's injuries do not change the fact that Fisher was a foreseeable plaintiff within the zone of risk at the accident scene created by the Swift driver.

¶27    *2. Policy Considerations*

¶28    Finally, we note that no policy considerations bar the imposition of these statutory duties upon the Swift driver. In evaluating whether a defendant owes a duty of care to a plaintiff, "we also weigh the 'policy considerations for and against the imposition of liability.'" *Prindel*, ¶ 37 (citation omitted). Specifically, we consider:

> (1) [T]he moral blame attached to a defendant's conduct; (2) the prevention of future harm; (3) the extent of the burden placed on the defendant; (4) the consequences to the public of imposing such a duty; and (5) the availability and cost of insurance for the risk involved.

*Prindel*, ¶ 37. In the instant case, the duties are statutorily imposed. By establishing these duties of care as the law of this State, the Legislature has already given ample consideration to the above-mentioned public policy implications. Thus, we need not discuss them further here.

¶29    The District Court did not err in denying Swift's motion for summary judgment on the issue of duty. We hold that as a matter of law, the Swift driver owed both common law and statutory duties of care to Fisher. The Swift driver owed Fisher the common law

10

duty to use the level of care exercised by an ordinary, prudent person in the same position. Additionally, §§ 61-8-302, 61-8-303(4), and 61-8-346(3), MCA, imposed specific, heightened duties of care upon the Swift driver. As a licensed driver and highway patrol officer, Fisher was a foreseeable plaintiff within the zone of risk at the scene of the accident. Thus, we agree with the District Court that the Swift driver owed Fisher a duty of care as a matter of law.

¶30   B. Breach

¶31   Though the District Court concluded that the Swift driver owed a duty of care to Fisher, it did not reach the question of whether the driver breached that duty, because it held that Fisher failed to adequately prove the causation element of his claim. As discussed further below, we are reversing the District Court's grant of summary judgment as to the issue of causation. Thus, on remand, it will be necessary for the fact-finder to consider whether the Swift driver breached the duties of care he owed to Fisher.

¶32   Specifically, the fact-finder should address whether the Swift driver violated §§ 61-8-302, 61-8-303(4), and 61-8-346(3), MCA. The violation of a statute is prima facie evidence of a breach of that statutory duty under Montana law. *See e.g. Prindel*, ¶ 28. This is a distinct analysis from negligence per se, which is addressed below. The fact-finder should also consider whether the Swift driver breached his common law duty of care to Fisher; that is, whether he acted as a reasonable and prudent person would have under the same circumstances.

¶33    C. Negligence Per Se

¶34    Fisher also argues that Swift was negligent per se.  Since the District Court did not address this argument in its summary judgment order, we decline to address it for the first time now on appeal.

¶35    **II. Did the District Court err in partially granting summary judgment to Swift on the issue of causation, and concluding that Fisher's injury was unforeseeable as a matter of law?**

¶36    A defendant's negligence is the direct cause of the plaintiff's injury if there is an uninterrupted chain of events from the negligent act to the plaintiff's injury.  *Cusenbary*, ¶ 26.  In such cases, "proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged."  *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 371, 916 P.2d 122, 139 (1996).   A party's act is the cause-in-fact of an event if "the event would not have occurred but for that conduct."  *Busta*, 276 Mont. at 371, 916 P.2d at 139 (citation omitted).

¶37    A. The Causation Analysis in Intervening Cause Cases

¶38    However, when the case involves an intervening cause, the analysis becomes more complicated.  An intervening cause is a force that comes into motion after the defendant's negligent act, and combines with the negligent act to cause injury to the plaintiff. *Cusenbary*, ¶ 26.  This is the crux of the issue in the instant case: was the Swift driver's alleged negligence the proximate cause of Fisher's injuries?   Or, did the alleged negligence of the towing company constitute an independent, intervening cause?

¶39 When the defendant alleges that the chain of causation has been severed by an independent, intervening cause, as Swift does here, we must undertake a two-tiered analysis. First, as discussed above, we consider whether the defendant's negligent act was a cause-in-fact of the plaintiff's injury. *Cusenbary*, ¶ 28. Second, we consider whether the defendant's act was a proximate cause of the plaintiff's injury. *Cusenbary*, ¶ 28. To establish proximate cause, the plaintiff must show that it was the "defendant's breach which 'foreseeably and substantially' caused his injury." *Eklund*, ¶ 45 (citation omitted). Though foreseeability "is generally properly confined to the duty element of negligence under Montana law, where a dispute presents the issue of an intervening act of a third party . . . we address foreseeability in the proximate cause context as well." *Prindel*, ¶ 44 (citation omitted). *See also Estate of Strever v. Cline*, 278 Mont. 165, 175, 924 P.2d 666, 672 (1996).

¶40 We have recognized that "not all intervening acts are independent. Those that are foreseeable do not break the chain of causation." *Cusenbary*, ¶ 25. The foreseeability inquiry is the same one employed in the duty context: we ask "whether the defendant could have reasonably foreseen that his or her conduct could have resulted in an injury to the plaintiff." *Hinkle*, ¶ 30. The specific injury to the plaintiff need not be foreseen. *Hinkle*, ¶ 30; *Prindel*, ¶ 44.

¶41 We have instructed that "if one of the reasons that makes a defendant's act negligent is a greater risk of a particular harmful result occurring, and that harmful result does occur, the defendant is generally liable." *Cusenbary*, ¶ 25. Specifically, we consider "whether the intervention of the later cause is a significant part of the risk

involved in the defendant's conduct, or is so reasonably connected with it that the responsibility should not be terminated." *Strever*, 278 Mont. at 176, 924 P.2d at 672 (quoting W. Page Keeton et al., *Prosser and Keeton on Torts* § 44, 302 (5th ed., West 1984). In sum, "a defendant's liability for his wrongful act will not be severed by the intervening act of a third party if the intervening act is one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances." *Strever*, 278 Mont. at 175-76, 924 P.2d at 672.

¶42 The issue of whether an intervening cause was foreseeable or not is a question of fact that is normally properly left to the fact-finder for resolution. *Prindel*, ¶ 45. However, where reasonable minds may reach but one conclusion, foreseeability may be determined as a matter of law for summary judgment purposes. *Cusenbary*, ¶ 39; *Prindel*, ¶ 45.

¶43 B. Were the Swift driver's actions the proximate cause of Fisher's injuries?

¶44 Fisher was injured when the J & D employees released the winch on the Swift driver's truck. The truck slid across the ice and into Fisher, pinning him between the truck's trailer and his own patrol car. Swift does not dispute that the conduct of its driver was the cause-in-fact of Fisher's injuries: but for the Swift driver's decision to keep driving in the blizzard, Fisher would not have been injured. Instead, Swift argues that the J & D employees were negligent in conducting the winching operation, and that their actions constitute an independent, intervening cause.

¶45 To determine whether the actions of the J & D employees broke the chain of causation, we must ask whether the Swift driver could have reasonably foreseen that his

14

allegedly negligent driving could result in an injury to Fisher. Certainly, reasonable minds could foresee that negligent driving on an icy highway in the midst of white-out conditions would result in an accident. It is also foreseeable that an emergency responder, such as a highway patrolman or medic, would be injured in the ensuing rescue operation.

¶46 Fisher alleges that the Swift driver was negligent because he chose to continue driving despite blizzard conditions. He also complains that Swift failed to take appropriate precautions in approaching the accident scene on the highway. The harm to be feared from negligent driving in blizzard conditions is precisely the type of harm that occurred: the Swift driver lost control of his truck on the ice, and collided with two other vehicles on the highway.

¶47 It is a well-known fact that vehicles have less traction on icy roads. Similarly, windy and snowy conditions impair a driver's ability to control his vehicle. Given these facts, we cannot conclude as a matter of law that it is unforeseeable that a high profile truck which goes out of control, slides on the ice and initially comes to rest on an icy surface, could be caught by the wind and again slide out of control during towing or removal operations. Thus, we disagree with the District Court's conclusion that Fisher's injury was unforeseeable as a matter of law.

¶48 However, contrary to the dissent's implication, we do not hold that Fisher's injury was foreseeable as a matter of law. Rather, we conclude that reasonable minds could differ as to whether Fisher's injury was a foreseeable result of the Swift driver's alleged negligence. On remand, a jury may find that Fisher's injury was too remote in time from

15

the Swift driver's negligence, and that the actions of the J & D employees constituted an independent, intervening cause. Or, a jury may find that the Swift driver's negligence was the proximate cause of Fisher's injuries. Either way, this fact-intensive inquiry must be left to the fact-finder for resolution.

¶49 On remand, the fact-finder must consider whether the forces causing Fisher's injury were a foreseeable result of the Swift driver's alleged negligence. If so, then the Swift driver's conduct is the proximate cause of Fisher's injury. In *Busta*, we recognized that phrases like "proximate cause" often only serve to confuse the jury, thus we cautioned against using that phrase in jury instructions. *Busta*, 276 Mont. at 371, 916 P.2d at 139. We recommended that in cases involving chain of causation issues, the following jury instruction be given: "The defendant's conduct is a cause of the (injury/death/damage) if, in a natural and continuous sequence, it helped produce it and if the (injury/death/damage) would not have occurred without it." *Busta*, 276 Mont. at 371, 916 P.2d at 139.

¶50 In sum, the question of whether Swift's conduct, in a natural and continuous sequence, helped produce Fisher's injury constitutes a genuine issue of material fact, and thus is inappropriate for resolution on summary judgment.

## CONCLUSION

¶51 We hold that the District Court did not err in finding that the Swift driver owed a duty of care to Fisher. We conclude that the District Court did err in determining that injury to Fisher was unforeseeable as a matter of law. Since this case involves the issue

16

of intervening cause, the question of whether Fisher's injury was foreseeable is a fact-intensive one best left to the fact-finder.

¶52 On remand, the fact-finder must consider several issues. First, given that the Swift driver owed a duty of care to Fisher under both the common law and several statutes, the fact-finder must determine whether Swift breached this duty. A finding that Swift violated a statute will be prima facie evidence of breach. Next, the fact-finder must consider whether the Swift driver's actions were the proximate cause of Fisher's injuries. In addressing the issue of intervening cause, the fact-finder must ask whether injury to Fisher was a foreseeable result of Swift's conduct.

¶53 In sum, the instant case presents factual questions that are not amenable to resolution by summary judgment. The District Court erred by granting Swift's motion for partial summary judgment on the issue of causation. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

17

Justice John Warner dissents.

¶54 I dissent. The Court determines that the concept of duty in Montana negligence law is effectively as broad as the Butterfly Effect, which the Court does not understand.[1] The Court abandons the legal concept of foreseeability to reach its conclusion that a duty is owed to anyone who is at an accident scene because all persons present are within an undefined zone of risk. Also, the Court so severely limits what constitutes an independent intervening cause that a legal determination of what constitutes an intervening cause is all but eliminated.

¶55 Swift is entitled to summary judgment that as a matter of law it owed no duty to Fisher. Of course, the Court is correct that without duty, and a breach of that duty, no negligence can exist. ¶ 13. Also, it has long been the law in Montana that whether a legal duty exists is a question of law to be determined by the court, and the concept of duty includes the necessity that the defendant could reasonably have foreseen his conduct could have resulted in an injury to the plaintiff. ¶ 17.

¶56 The District Court held, and this Court agrees, "there is no question that when a person drives in a negligent manner, a reasonably prudent person could foresee that a law

_____

[1] The Butterfly Effect is the idea that a butterfly stirring the air today in Beijing can transform storm systems next month in New York. James Gleick, *Chaos* 8 (Penguin Books 1987). Flapping butterfly wings in China represents a small change in initial conditions. These small actions cause a chain of events leading to large-scale phenomena. Had the butterfly not flapped its wings, the storm may not have occurred; the first accident may not have happened; Fisher may not have come to investigate it; Swift's driver might not have hit Fisher's patrol car; J & D might not have had to move Swift's truck; J & D's workman might not have carelessly unhooked the trailer; and Fisher would not have been injured by that workman's negligence. Thus, the butterfly in China is legally required to foresee that flapping its wings would likely result in an accident on Sieben Flats in Montana. Considering the Butterfly Effect, and the Court's analysis, everything imaginable is foreseeable.

18

enforcement officer attending a resulting accident could be injured by oncoming traffic." Thus, the Court concludes Swift's driver could foresee Fisher's injury and duty is established. The Court correctly states the law. But neither the District Court nor this Court applied the law to the facts. Fisher was not injured by oncoming traffic. He was injured by J & D's careless handling of Swift's trailer, which had come to rest and had passed out of the control of Swift's driver at least an hour before Fisher was injured.

¶57 A correct analysis of whether Swift owed Fisher a duty starts with the well-established law that foreseeability is of "primary importance in establishing the existence of a duty." *Prindel*, ¶ 39. If a reasonably prudent defendant cannot reasonably foresee danger of direct injury nor risk from an intervening cause, he is not negligent. *Prindel*, ¶ 39; *Busta*, 276 Mont. at 362, 916 P.2d at 134 (quoting *Mang*, 153 Mont. at 437, 458 P.2d at 781). The specific accident that ensues, however, need not be foreseen. *Prindel*, ¶ 39; *Ekwortzel v. Parker*, 156 Mont. 477, 483, 482 P.2d 559, 562-63 (1971).

¶58 In deciding whether Swift's driver could reasonably foresee the injury that occurred to Fisher, it is necessary to cut through the hyperbole of counsel and examine the facts as they are presented in the record.

¶59 The record presented to the Court does not show the extent of the storm on I-15 the day of the accident. It is not known just where on I-15 the conditions became so bad that a reasonable man would have pulled to the side of the road and stopped. In the opinion of the sheriff's deputy and the highway patrolmen on the scene, at the point where the accident happened a reasonable driver would have pulled over because the snow was blowing to the extent that visibility was occasionally near zero. The officers

did not say it was necessary to stop because the surface of the road was too slick to continue.

¶60     Fisher was summoned to investigate an accident where a tractor semi-trailer rig had sideswiped two cars that had stopped on the shoulder of the road to wait out the storm. When he arrived, he parked behind the patrol car of a Lewis & Clark County deputy sheriff who was on the scene directing traffic. He parked his patrol car so that it straddled the fog line on the right-hand side of the road in the southbound lanes. He was sure of this because he could see the fog line on the highway. Another car stopped behind Fisher's patrol car. A short time later Swift's driver, Shultz, came along at a slow speed and sideswiped both Fisher's patrol car and the car behind it, stopping alongside and in contact with the patrol car. Fisher broke off his investigation of the prior accident, told Shultz to go back to his truck, and then reported the accident involving his patrol car. He then resumed his investigation of the first accident. He talked to people involved in the first accident inside his patrol car while it was pinned beside the Swift trailer.

¶61     About an hour to an hour and ten minutes later the J & D wrecker arrived, along with two workmen. One of the J & D workmen told Fisher that the plan was to attach a cable to the rear axels of the semi-trailer and pull it away from his patrol car and the other car. Fisher was then to back his patrol car out of the way. The trailer was moved about five feet in this fashion. After the trailer was moved, Fisher got out of his patrol car and went between it and the trailer. He and one of the J & D workmen viewed the damage to the patrol car, which was not too severe. The roadway was described as not slick like ice, but slick like heavy snow. Fisher heard someone say, "Look out," turned, and saw the

20

trailer coming toward him. No one saw the trailer sliding. It may have been pushed by the wind. But, all agree that it moved only when the other J & D workman unhooked it from the wrecker. Fisher was unable to get out of the way, and he was pinned between the trailer and his patrol car causing his injuries.

¶62   As we are concerned with a summary judgment motion, it is proper to assume that Swift's driver was negligent in not stopping when he could not see the road ahead of him, and thus he sideswiped Fisher's highway patrol car and the other car.[2] After that accident Swift's negligence came to a halt. The scene was quiet for over an hour. Fisher had not been injured.

¶63   Swift's trailer had to be moved. It mattered not whether it was in the way because of carelessness or if it had simply broken down—it had to be moved. Swift and its driver had nothing to do with moving the trailer. J & D successfully moved the trailer. The move was completed, and Fisher and his car were free to go. Fisher had not been injured.

¶64   When Fisher decided to go between the trailer and his patrol car, the trailer was secured by a cable attached to the wrecker. Fisher, at that point, was merely surveying the damage which had been caused by an accident that had happened over an hour before, in which he had not been injured. And, he was not acting in an official capacity. The damage to his patrol car was being investigated by his colleague. It was the action of J & D's workman in unhooking the wrecker cable from the trailer which allowed it to roll

---

[2]   Of course, the driver of the tractor semi-trailer unit that sideswiped the original two cars was also negligent. Under the Court's analysis of both duty and independent intervening cause, the driver of the first rig, who caused Fisher to come to the scene, would be subject to suit claiming contribution. Who knows when, if ever, the chaos created by the Court's foreseeability analysis ends?

back into Fisher and the two cars, causing Fisher's injuries.[3]

¶65    The question of whether Swift owed a duty to Fisher is answered by an analysis of whether its driver, Shultz, was reasonably required to foresee that if he continued in the storm he might come upon other cars and trucks that were stopped on the road because they had been in an accident; that he might hit two of the stopped cars; that a person already at the scene of the accident he was in, but who was not injured in such accident, could well be standing in the road looking at the damage an hour later; and that, while doing so, that person would be injured when an operator of the wrecker clearing the roadway was negligent.

¶66    The chief element of whether a defendant has a duty to a plaintiff is the foreseeability of the risk the defendant takes.    And, because duty is inextricably intertwined with foreseeability, whether a particular defendant owes a particular plaintiff a duty must be decided only on a case-by-case basis.  *Mang*, 153 Mont. at 437, 458 P.2d at 781.  In this case the Court incompletely analyzes the concept of foreseeability, does not take into consideration the facts of how Fisher's injuries came about, and, therefore, reaches the wrong conclusion.

¶67    The Court cites only a part of the analysis in *Hinkle* to establish that the sole question a court asks is whether a defendant could have foreseen that his or her conduct could result in an injury to the plaintiff.  ¶ 21 (citing *Hinkle*, ¶ 30).  The Court then completes its destruction of foreseeability in Montana tort law by ignoring the facts of the case and then taking out of context the statement in *Prindel* that the foreseeability

---

[3]    All parties agree that J & D was negligent.

22

question presented was merely whether the plaintiff was within a foreseeable zone of risk. ¶ 21 (citing *Prindel*, ¶ 38).

¶68    The Court's analysis of foreseeability in *Hinkle* was not so shallow as in this case. The Court in *Hinkle*, quoting with approval *Lopez v. Great Falls Pre-Release Services, Inc.*, 1999 MT 199, ¶ 28, 295 Mont. 416, ¶ 28, 986 P.2d 1081, ¶ 28, stated:

> "Put simply, in analyzing foreseeability in the duty context, we look to whether or not the injured party was within the scope of risk created by the alleged negligence of the tortfeasor—that is, was the injured party a foreseeable plaintiff?"

*Hinkle*, ¶ 30.   In this case, the scope of the risk created by the alleged negligence of Swift's driver is what must be analyzed in the context of the facts of how Fisher came to be injured.

¶69    Likewise, *Prindel* most definitely does not stand for the proposition that anyone who happens to be in the area of an accident is a foreseeable plaintiff, as the Court states in ¶ 23.  *Prindel* concerned a man carelessly released from jail by the defendant Ravalli County.  The man was dangerous and he assaulted Prindel.  The Court held in *Prindel* that the county owed a duty of reasonable care, not to anyone whom the man might have harmed, but only to those persons within the area the defendant county could reasonably have foreseen might be harmed.  *Prindel*, ¶ 39 (citing *Lopez*, ¶ 31).  Prindel was assaulted by the man Ravalli County carelessly released within ten blocks of the jail.  Thus, the Court held that he was a foreseeable plaintiff under the circumstances.  *Prindel*, ¶ 42.

¶70    The Court's conclusion that anyone who happens to be at a place where an accident occurs is a foreseeable plaintiff constitutes a complete distortion of Montana

law. What the Court has done is change the concept of duty from an analysis of what a person can reasonably foresee to be a result of his actions and expanded it to include potentially infinite liability for anything a person can imagine might possibly be the result of his actions. When applied correctly, foreseeability in the law is more limited than imagination in assessing a risk. The law limits duty to that which a reasonable person would foresee as likely to happen as a result of his actions.

> "In striking this balance—that is, in weighing the likelihood of harm, the seriousness of injury and the value of the interest to be sacrificed—the law judges the actor's conduct in the light of the situation as it would have appeared to the reasonable man in his shoes at the time of the act or omission complained of. Not what actually happened, but what the reasonable prudent person *would then have foreseen as likely to happen*, is the key to the question of reasonableness * * *."
> The element emphasized above—what the reasonably prudent person *would then have foreseen as likely to happen*—constitutes a limitation on the otherwise potentially infinite liability which would follow every alleged negligent act, and the law of torts holds a defendant amenable only for injuries to others which, to defendant at the time, were reasonably foreseeable.

*Mang*, 153 Mont. at 436-37, 458 P.2d at 781 (emphasis in original) (quoting in part Fowler V. Harper & Fleming James, Jr., *The Law of Torts* vol. 2, 929 (Little, Brown & Co. 1956)).

¶71 When the law is correctly applied to the facts presented by this case, it becomes obvious that Swift's driver could not reasonably foresee the injury to Fisher when he proceeded into the snowstorm on Sieben Flats. As he could not see where he was on the highway, he could reasonably foresee it was likely he would hit another car. As he could not see, he could reasonably foresee that other motorists could not either, and the road might be partially blocked by vehicles that had been in a previous accident. He might

reasonably foresee that a highway patrolman would be investigating a previous accident. If so, the patrolman would be on the road, and if this were the case, he would likely run into him or her causing injury. At the very edge of foreseeability, Swift's driver might foresee that if he did cause an accident, it was likely that a highway patrolman would investigate that accident, and another motorist might come along and negligently injure the patrolman. However, a reasonably prudent person could not foresee that the risk he took by proceeding into the storm made it likely that over an hour after he caused a non-injury accident, a highway patrolman not investigating the accident would be injured not by another motorist who could not see where he was going, but by the negligence of a wrecker crew in unhooking a cable from his trailer after they had moved it. As the Court notes in ¶ 21 and as stated in *Palsgraf*, a defendant owes a duty only with respect to those hazards whose likelihood made the conduct unreasonably dangerous. Shultz's conduct did not make it likely that J & D would injure Fisher.

¶72 The injury to Fisher was not a foreseeable consequence of Swift's driver proceeding into the snowstorm when he could not see. Therefore, Swift owed no duty to Fisher, and the judgment of the District Court dismissing the action against Swift was correct.

¶73 As the injuries to Fisher were not foreseeable by Swift's driver, Swift owed him no duty and is entitled to summary judgment. However, if Swift owed a duty to Fisher, which it did not, I would nevertheless conclude that the negligent action of J & D's workman in unhooking the cable from Swift's trailer was an independent intervening cause of Fisher's injuries as a matter of law.

¶74 As the Court stated in *Prindel*, when a case presents the issue of an intervening act of a third party, foreseeability is also addressed in the context of proximate cause. *Prindel*, ¶ 44. To the extent that the specific injury to the plaintiff must be foreseeable, the issue of intervening acts normally involves questions of fact which should be left to a jury. *Prindel*, ¶ 45. However, when reasonable minds can reach but one conclusion the question of foreseeability is determined as a matter of law. *Prindel*, ¶ 45.

¶75 In ¶¶ 46-47, the Court misapprehends the facts of how Swift's driver came to be in an accident. He did not lose control of his tractor semi-trailer on the ice. He did not lose traction, and he maintained control of his truck. He was driving when he could not see because of the blowing snow. He sideswiped Fisher's patrol car and the car behind it, which were partially in the far right driving lane, because he did not see them. Nevertheless, I do not disagree with the Court's proposed instruction concerning independent intervening cause set forth at ¶ 49. However, this instruction alone does not adequately address the element of foreseeability as it relates to causation that this Court emphasized in *Busta* and its progeny. The conduct of Swift's driver is a cause of Fisher's injury only if, in a natural and continuous sequence, it was a foreseeable and substantial factor in bringing it about. The *Restatement (Second) of Torts* identifies three factors the fact-finder should pay close attention to when determining whether the defendant's conduct was a substantial factor in intervening cause cases:

> (a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;
> (b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or

has created a situation harmless unless acted upon by other forces for which the actor is not responsible; [and]

(c) lapse of time.

*Restatement (Second) of Torts* § 433 (1965). An analysis of this case in conformity with these well-accepted principles leads to only one conclusion—J & D's negligence is the cause of Fisher's injuries.

¶76 This case necessarily requires a consideration of whether Shultz's conduct created a force which was in continuous and active operation up to the time Fisher was injured. It did not. In addition, it must be considered whether Shultz's conduct created a situation that harmed Fisher before there was a lapse of time between his conduct and the injury. It did not. It must also be considered whether the situation created by Shultz was acted upon by J & D's workman, for whom neither he nor Swift was responsible. It cannot be denied that Fisher would not have been injured if not for the actions of the wrecker crew.

¶77 Shultz was in an accident that did not harm Fisher. Over an hour later J & D's wrecker arrived. The situation created by the accident did not create a situation that would have harmed Fisher unless it was acted upon by the negligent conduct of J & D. Reasonable minds could not differ in finding that the negligence of J & D is an independent intervening cause of Fisher's injury.

¶78 Considering the well-accepted and applicable law concerning independent intervening cause, as promulgated by the *Restatement (Second) of Torts*, which is appropriately called to a jury's attention by the trial court and argued by counsel, reasonable minds could not differ. J & D's negligence in releasing the trailer to roll back into Fisher was the independent intervening cause of Fisher's injuries. This conclusion is

further bolstered by the law providing that under these circumstances Swift could reasonably request an instruction that one is not required to anticipate an injury that can only result from another's negligence. *See Peschke v. Carroll College*, 280 Mont. 331, 340, 929 P.2d 874, 879 (1996). Swift is entitled to summary judgment that Fisher's injury was the result of an independent intervening cause.

¶79     I dissent from the Court's untoward expansion of the concept of foreseeability as it relates to duty to the effect that anyone injured near an accident, no matter how, is a foreseeable plaintiff. I also dissent from the Court's conclusion that reasonable minds could differ on whether J & D's negligence was an independent intervening cause of Fisher's injury. They could not.

/S/ JOHN WARNER

Chief Justice Karla M. Gray and Justice Jim Rice join in the foregoing dissent.

/S/ KARLA M. GRAY
/S/ JIM RICE