FILED

September 15 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0056

DA 15-0056

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 276N

DENNIS KONOPATZKE and JEANIE KONOPATZKE
as Trustees of and on behalf of the KONOPATZKE LIVING
TRUST dated September 27, 1995,

      Plaintiffs and Appellants,

    v.

DUANE BAUCH and VALERIE J. BAUCH,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 12-1050(D)
Honorable David M. Ortley, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Richard De Jana, Richard De Jana & Associates, PLLC; Kalispell,
Montana

      For Appellees:

          Randall A. Snyder, Snyder Law Office, PC; Bigfork, Montana

Submitted on Briefs:  August 5, 2015
Decided:  September 15, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Dennis Konopatzke and Jeanie Konopatzke (Konopatzkes) appeal from the District Court's entry of summary judgment in favor of Duane Bauch and Valerie J. Bauch (Bauchs). The court ordered enforcement of the parties' negotiated Settlement Agreement (Agreement) and accompanying Mutual Easement Termination document.

¶3 Konopatzkes and Bauchs are neighbors on Whitefish Lake and have had various property-related disputes over the years. In September 2012, Konopatzkes filed a complaint that alleged Bauchs' driveway encroached upon Konopatzkes' property, preventing them from making improvements, and sought removal of the encroachment. Konopatzkes also alleged that Bauchs would not permit Konopatzkes to install a water system on Bauchs' property as provided for by an easement on Bauchs' property in Konopatzkes' favor (1975 Easement). The 1975 Easement provided for the "construction, maintenance, repair, and operation of the presently existing water system, and for the installation, construction, maintenance, repair and operation of any new water system . . . ." Konopatzkes sought an order restraining Bauchs from interfering with Konopatzkes' water system easement.

2

¶4 In addition to the 1975 Easement, there was also an easement in Konopatzkes' favor for a pathway traversing both properties and providing access to the lake (Pathway Easement), and another easement in Konopatzkes' favor for a water line that originates on the Konopatzke property and terminates in a hose or pipe that runs into Whitefish Lake from Bauchs' property, near Bauchs' dock (1957 Easement). Bauchs asked Konopatzkes to remove this line but Konopatzkes refused.

¶5 With the assistance of a settlement master, the parties engaged in prolonged settlement negotiations concerning the easements and exchanged numerous offers and counter-offers. The terms of these offers and the particular language used to describe the various easements therein were detailed by the District Court and are referenced in the parties' arguments on appeal. The final offer, which became the basis of the parties' Settlement Agreement, provided for the "termination of all historical easements between the properties."

¶6 The Settlement Agreement was signed by the parties in June 2013 and required the Bauchs to remove their driveway's encroachment on Konopatzkes' property,[1] relocate the pathway onto Bauchs' land, and apply for a permit to bury the electrical and waterlines on the property. Access as necessary to complete these tasks was granted. Konopatzkes agreed to deposit $6,000 into a trust account to be released to Bauchs following completion of the work. The Agreement further provided that Bauchs' attorney would prepare a mutual release of claims, a stipulation of dismissal, and a

---

[1] The Settlement Agreement acknowledged that this had already been done.

3

document of "termination of all historical easements between the parties." These additional documents were to be signed and recorded once the contemplated work was completed, including a Mutual Easement Termination document that detailed the agreed termination of easements. As ultimately drafted, that document provided that "The Easement recorded December 9, 1957 at Reception No. 7294 (water line), the Easement recorded September 12, 1975 at Reception No. 8255 (pathway) and any unrecorded or historical easements not listed or unknown at this time, are terminated, extinguished and expunged."

¶7 Konopatzkes deposited the $6,000 in trust and the contemplated work was largely completed by Bauchs. However, when Konopatzkes received the proposed additional documents, they refused to sign them and withdrew their deposit, complaining that the language of the Mutual Easement Termination was very broad and could be "a problem for our existing waterline that goes into the lake," a reference to the 1957 Easement.

¶8 In November 2013, Bauchs formally answered Konopatzkes' complaint, raising affirmative defenses and counterclaiming that Konopatzkes had unlawfully failed to complete the settlement by refusing to execute the Mutual Easement Termination. Bauchs asked for specific performance. Konopatzkes answered Bauchs' counterclaim by asserting that their lack of performance was based upon the "all historic easements" language, and that they had never intended to release any rights to the 1957 Easement. They asserted the Agreement had been entered based upon a mutual misunderstanding of the terms of the settlement, and asked the court to rescind the Agreement.

¶9 Bauchs sought summary judgment seeking enforcement of the Agreement. On September 30, 2014, the District Court issued an order granting Bauchs' motion and requiring Konopatzkes to complete the remaining terms of the Agreement. The court concluded that the Agreement was not ambiguous and was enforceable. It rejected evidence offered by Konopatzkes to demonstrate their actual intent under the parol evidence rule, and concluded there was no mutual mistake by the parties in entering the Agreement, reasoning "Konopatzkes offer no evidence that the phrase 'all historical easements' was the result of any mutual or unilateral mistake. . . . Rather, one party simply asserts that the agreement does not say what the party intended it to say."

¶10 On appeal, Konopatzkes argue the Agreement's terms are not in accordance with the parties' intent, noting that the District Court, despite concluding there was no mistake, had to revise the Mutual Easement Termination to ensure that it was consistent with the Agreement, necessarily demonstrating that there was, in fact, a mistake made by the parties.[2] They argue that the Agreement provided that their counsel had the right to "review and edit or approve" the additional documents, but that all of their counsel's suggested corrections were refused. Finally, they argue the District Court improperly held that the affidavit of their attorney, offered to demonstrate the parties' negotiations

---

[2] The District Court revised a reference to an incorrect easement in the Mutual Easement Termination document, reasoning "[i]n fact, there was a mutual mistake with regard to the easement language in the proposed Mutual Easement Termination. . . . Both parties concede this is an error. . . . However, the error is of no moment. The language of the Settlement Agreement is clear; there is no mistaking that the parties agreed in writing to the termination of 'all historical easements between them.'"

were intended only to address the 1975 Easement and Pathway Easement, was barred by the parol evidence rule.

¶11 Bauchs respond that Konopatzkes have improperly conflated the Settlement Agreement and the Mutual Easement Termination, and note that the District Court revised the language of the Mutual Easement Termination alone, not the Agreement, and that this revision did not alter the Agreement, but enforced it consistent with the Agreement. Bauchs note the District Court's conclusions that the Agreement was unambiguous, that Konopatzkes' attorney's right to "review and edit and approve" the final documents did not change the fact that the parties had agreed to the material terms of the settlement in the Agreement, and that Konopatzkes have been unable to provide admissible evidence of either mistake or fraud.

¶12 We review orders granting summary judgment de novo. *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶ 12, 342 Mont. 335, 181 P.3d 601. A district court's determination of whether a party is entitled to judgment as a matter of law is a conclusion of law, reviewed for correctness. *Hughes v. Lynch*, 2007 MT 177, ¶ 8, 338 Mont. 214, 164 P.3d 913; *Cusenbary v. United States Fid. & Guar. Co.*, 2001 MT 261, ¶ 9, 307 Mont. 238, 37 P.3d 67.

¶13 The District Court concluded that Konopatzkes had failed to offer any objective extrinsic evidence to show the "all historical easements" language meant something other than its plain meaning or that it had resulted from a mistake or "mis-transmission of their intentions." As the court noted, the parol evidence rule prohibits the admission of

6

extrinsic evidence to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous writing. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 21, 338 Mont. 41, 164 P.3d 851. However, extrinsic evidence may be considered to determine if a contract is ambiguous, so long as it objectively demonstrates ambiguity. *Richards v. JTL Group, Inc.*, 2009 MT 173, ¶ 33, 350 Mont. 516, 212 P.3d 264. Here, the court noted that Konopatzkes were not asserting the Agreement was ambiguous, but rather that their intent was to refuse to negotiate regarding other easements. Regardless of their intentions, the Agreement was exchanged, reviewed by legal counsel, signed by the parties, and then substantially executed.[3]

¶14 Konpatzkes object to Bauchs' memorandum of costs, which was adopted by the District Court when entering judgment. Bauchs now concede the issue and waive those costs.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal

---

[3] Footnote #2 of the District Court's order stated as follows:

> The proposed release documents mistakenly refer to another water system easement, recorded in 1957 (see Defs.' Mot. Summ. J. Ex. C (1957 Easement)), instead of the [1975 Easement]. The 1957 easement burdens both parcels and benefits nonparties to the suit; it is therefore not an easement "between the parties" that could be extinguished by agreement. At argument, both parties clarified that [the] 1957 easement has nothing to do with the instant action.

This holding may or may not be inconsistent with the court's general holding that "all historical easements between" the parties have been terminated. However, the parties have not raised or argued this issue. We address only those issues raised on appeal, and affirm the District Court's order holding that the Settlement Agreement is enforceable and ordering its performance.

presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶16 Affirmed.

/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ PATRICIA COTTER